IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBERTO REYES BACAPICIO,<br><br>Plaintiff,<br><br>v.<br><br>KIRSTJEN NIELSON, et al.,<br><br>Defendants. | Case No. 19-cv-00236-CRB<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION** |

Petitioner Jose Alberto Reyes Bacapicio has filed a Petition for Writ of Habeas Corpus (Dkt. 1), and now seeks a preliminary injunction to prevent the Department of Homeland Security from deporting him while he pursues an appeal before the Board of Immigration Appeals of his removal order. Mot. (Dkt. 2). Because the Court concludes that Petitioner is unlikely to succeed on the merits of his claim, his Motion for a Preliminary Injunction is DENIED.

## I. BACKGROUND

Petitioner, a Mexican citizen, was placed in removal proceedings in 2011 pursuant to a Notice to Appear ("NTA") that he now argues is invalid because it failed to specify the time, date, and place of his removal hearing. Habeas Pet. ¶¶ 12, 16; Gagelonia Dec'l (Dkt. 15-1) ¶ 7; Pet. Supp. Br. at 5 (Dkt. 24). He thereafter conceded removability based on his criminal record and requested relief from removal. Gagelonia Dec'l ¶ 8. The Immigration Judge ("IJ") reset his merits hearing date multiple times. Id. at ¶ 10. Eventually, in April 2017, his hearing was set for October 11, 2018.

In September 2018, Petitioner's counsel moved to withdraw because he had been

unable to reach Petitioner. Resp. Opp. Exh. H (Dkt. 15-9). On October 11, 2018, Petitioner's counsel appeared at the hearing before the IJ, but Petitioner himself did not appear. Gagelonia Dec'l ¶ 18; Resp. Opp. Exh. G (Dkt. 15-8). The IJ then ordered Petitioner removed in absentia. Gagelonia Dec'l ¶ 18; Resp. Opp. Exh. G

On November 20, 2018, Petitioner filed a Motion to Reopen and Reconsider his removal order. Gagelonia Dec'l ¶ 20. The next day, he was arrested because he had a final administrative order of removal, although that order was stayed pending the adjudication of the Motion to Reopen. Id. ¶ 21. On December 13, 2018, the IJ denied the Motion to Reopen. Id. ¶ 22. Petitioner then filed a Motion to Reconsider before the IJ. Id. ¶ 23. While that Motion to Reconsider was pending, Immigration and Customs Enforcement advised Petitioner's attorney that Petitioner was scheduled for removal to Mexico on January 14, 2019.

On January 13, 2019, Petitioner filed his habeas petition before this Court. Habeas Pet. He seeks to stay his deportation. Id. ¶ 32. He simultaneously filed a Motion for a Temporary Restraining Order, Mot. (Dkt. 2), asking this Court to stay his removal "because his removal would preclude him from reserving his right to appeal the IJ's decision to the Board of Immigration Appeals (BIA) with regard to the motion to reconsider that is currently pending before the Immigration Court, and would therefore violate his right to due process." Id. at 3. On January 22, 2019, he filed an appeal of the IJ's motion to reconsider and an emergency motion to stay removal. Dkt. 17-1; cf. Gagelonia Dec'l ¶ 24.

The Court initially granted Petitioner's ex parte motion for a Temporary Restraining Order and enjoined Petitioner's removal until January 27, 2019. Order Granting Ex Parte Mot. for Temp. Rest. Order (Dkt. 5). This Court then issued an order construing his motion as a Motion for a Preliminary Injunction and setting an expedited briefing schedule and hearing. Order Setting Schedule for Prelim. Inj. Hearing (Dkt. 13). Following the hearing on that Motion, see Dkt. 18, the Court extended the temporary restraining order for good cause until February 10, 2019. Order (Dkt. 20).

## II. DISCUSSION

The core of Petitioner's Motion for a Preliminary Injunction is his claim that his deportation before he litigates his appeal before the BIA would violate the Due Process Clause of the Fifth Amendment. Mot. at 3-4. Respondent focuses its argument on a threshold issue: whether this Court has jurisdiction over such a claim at all. Resp. Opp. at 6 (Dkt. 15).

Because the Court finds that Petitioner has not met his burden to show that he has a likelihood of success on the merits, see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), and thus the Court can readily resolve the merits of Petitioner's Motion for a Preliminary Injunction, the Court assumes without deciding for the purposes of the motion that it has hypothetical jurisdiction, and denies Petitioner's Motion for a Preliminary Injunction.

### A. Jurisdiction

Respondent devotes a substantial portion of its briefing to arguing that this Court must deny Petitioner's motion for a preliminary injunction because it lacks jurisdiction over this matter. Resp. Opp. at 6-12. Respondent points to the jurisdiction-stripping provisions of 8 U.S.C. § 1252, which include a section that provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28 [habeas corpus], or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Id. § 1252(g); see Resp. Opp. at 6-9. Respondent contends that under § 1252, this Court is "preclude[d] . . . from exercising jurisdiction over Petitioner's motion and petition." Resp. Opp. at 9.

Petitioner responds that his Motion for a Preliminary Injunction is not foreclosed under § 1252 because he only seeks to stay his removal pending the BIA's decision is

3

necessary to ensure him an opportunity to pursue that appeal—and thus to preserve his "day in court." Pet. Reply at 3-4 (Dkt. 17); see Singh v. Gonzales, 499 F.3d 969, 979 (9th Cir. 2007) (district court had jurisdiction over a habeas petition that sought to ensure noncitizen no more than a "day in court").

The Court need not resolve the parties' jurisdictional dispute. And that is so because under the doctrine of "hypothetical jurisdiction," in cases in which "jurisdiction is disputed," a Court may sometimes "assume, without deciding, the existence of subject matter jurisdiction." In re Grand Jury Subpoena Issued to Bailin, 51 F.3d 203, 206 (9th Cir. 1995). This "doctrine has several required elements: (1) the jurisdictional question must be difficult; (2) the merits . . . must be insubstantial; (3) the [merits] must be resolved against the party asserting jurisdiction; and (4) undertaking a resolution on the merits as opposed to dismissing for lack of jurisdiction must not affect the outcome." Id.; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 & n.2 (1998) (explaining that unlike Article III jurisdiction, courts may presume statutory jurisdiction when the merits are more easily resolved).

The question whether Petitioner's claim falls within the jurisdictional exception recognized by Singh is a complex one. On the other hand, the merits of the Motion for a Preliminary Injunction are "insubstantial" and "must be resolved against the party asserting jurisdiction." See Bailin, 51 F.3d at 206. Thus, because the outcome of this Motion would be the same as if the Court concluded that the Court lacked jurisdiction over the Motion, assuming without deciding jurisdiction has no effect on the outcome—in either case, the Court will deny the Petitioner's Motion. In consequence, it is appropriate for the Court assumes without deciding that it has jurisdiction. On that assumption, the Court now proceeds to the preliminary injunction standard.

### B. Preliminary Injunction

To obtain a preliminary injunction, a party must make four showings: that he (1) "is 'likely to succeed on the merits,' (2) [he] is 'to suffer irreparable harm in the absence of

4

preliminary relief,' (3) 'the balance of equities tips in [his] its favor,' and (4) 'an injunction is in the public interest.' Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Winter, 555 U.S. at 20); see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standard for preliminary injunction and temporary restraining order are "substantially identical"). The "[l]ikelihood of success on the merits 'is the most important' Winter factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors." Disney Enterprises, 869 F.3d at 856 (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).

In support of his Motion, Petitioner's sole argument that he meets the first prong of the Winter test is that he is "likely to success on the merits of his case given that statutory and case law support that he will ultimately be successful in challenging his removal order in the appropriate channel." Pet. Reply at 16; see also Pet. Mot. at 3 ("Petitioners are likely to succeed in showing that their removal prior to the adjudication of their Motion to Reopen violates controlling statutory and case law."); Pet. Supp. Br. at 3 ("Regarding a likelihood of success with regard to whether the Petitioner merits a preliminary injunction, the Petitioner argues that his NTA is still invalid."); see also Winter, 555 U.S. at 20. In support of that claim, he argues that "Due Process prohibits the removal of a person when there is no removal order. Statutory and case law is clear that when [an NTA] does not include the time and place of the removal proceedings, that jurisdiction does not vest with the immigration court" and so "any removal order from such a proceeding is invalid." Mot. at 3-4.

Petitioner's argument is based on the Supreme Court's recent decision, Pereira v. Sessions, 138 S. Ct. 2105 (2018), which addressed the statutory requirements of an NTA in the context of the "stop-time rule."[1] Id. at 2109-10. Pereira held that, for purposes of the "stop-time" rule, an NTA must include time and date information because the statutory

---

[1] Under the Immigration and Nationality Act, "[n]onpermanent residents . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." Pereira, 138 S. Ct. at 2109 (citing 8 U.S.C. § 1229b(b)(1)). The "stop-time" rule defines when the period of "continuous physical presence in the United States" ends. Id. at 2110.

5

provision that establishes the "stop-time" rule defines the scope of a "period of continuous physical presence" such that it is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A); see also Pereira, 138 S. Ct. at 2109. "Section 1229(a), in turn, provides that the Government shall serve noncitizens in removal proceedings with 'written notice (in this section referred to as a 'notice to appear') . . . specifying' several required pieces of information, including '[t]he time and place at which the [removal] proceedings will be held.'" Pereira, 138 S. Ct. at 2019-2110 (quoting 8 U.S.C. § 1229(a)(1)(G)(i) (alterations in original)).

Petitioner argues that his NTA lacked time and date information, and thus, under Pereira, his removal would be pursuant to an invalid NTA. Mot. at 3-4; Pet. Supp. Br. at 3. He further urges, his removal while his BIA appeal is pending might prevent him from pursuing that appeal, and thus violate the Due Process Clause. Pet. Reply at 6-10.

When Petitioner first filed his Habeas Petition and Motion, the Ninth Circuit had yet to determine Pereira's impact on the question when jurisdiction vests with an Immigration Court—that is, under Pereira, whether jurisdiction vests in an Immigration Court upon issuance of an NTA that lacks time and date information. However, the Ninth Circuit has recently resolved that question and held that an NTA vests an Immigration Court with jurisdiction over a noncitizen's removal proceedings when that NTA satisfies the regulatory requirements—which do not include a requirement that an NTA include time and date information. Karingithi v. Whitaker, 2019 WL 333335 at *3 (9th Cir. Jan. 28, 2019) (citing 8 C.F.R. §§ 1003.13-14, 1003.18).

In Karingithi, the Petitioner "argue[d] that if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a), but also does not vest jurisdiction with the IJ." Karingithi, 2019 WL 333335 at *3. The Ninth Circuit rejected this reasoning because:

> [T]he regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a "notice to appear." If the regulations did not clearly enumerate requirements for the

> contents of a notice to appear for jurisdictional purposes, we might presume they sub silentio incorporated § 1229(a)'s definition. But the plain, exhaustive list of requirements in the jurisdictional regulations renders that presumption inapplicable here. Not only does that list not include the time of the hearing, reading such a requirement into the regulations would render meaningless their command that such information need only be included "where practicable." The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ.

Id. (internal citations omitted).

Petitioner argues that the IJ nevertheless lacked jurisdiction over his case, and thus his removal was invalid, because "[u]nder Karingithi, the Petitioner's NTA is still deficient—and thus jurisdiction never vested—given that the 'place' was not listed." Pet. Supp. Br. at 5. Petitioner argues that the regulation specifying the requirements of an NTA for jurisdictional purposes require that the NTA include the place. Id. (citing 8 C.F.R. § 1003.15(b)). But the regulation includes no such requirement. The regulation on which Petitioner relies, 8 C.F.R. § 1003.15 states, in full, that a notice to appear must include:

> (1) The nature of the proceedings against the alien;
> (2) The legal authority under which the proceedings are conducted;
> (3) The acts or conduct alleged to be in violation of law;
> (4) The charges against the alien and the statutory provisions alleged to have been violated;
> (5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 C.F.R. § 1292.1;
> (6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and
> (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b). Nothing in § 1003.15(b) requires that the NTA must include the place the hearing will occur. Id. And so Petitioner has failed to identify why his NTA could be construed as deficient under Karingithi.[2]

---

[2] Petitioner also contends that "[c]ourts within the Ninth Circuit have expressly rejected Karingithi's holding that the regulation's definition of an NTA . . . is controlling to vest jurisdiction." Pet. Supp. Br. at 6. Not so. The cases Petitioner cites are district court

7

In consequence, Petitioner has not shown that there is a "likelihood of success on the merits," because his argument on this <u>Winter</u> prong is predicated solely on the argument that it violates Due Process to deport a person who lacks a valid removal order.³ Mot. at 3; Pet. Reply at 16; Pet. Supp. Br. at 3-4; <u>see also</u> <u>Winter</u>, 555 U.S. at 20. And that claim, in turn, is based solely on his argument that his underlying removal order is invalid is that the NTA he received could not have vested the Immigration Court with jurisdiction because it lacked necessary time, date, and place information. Mot. at 3-5; Pet. Reply at 16; Pet. Supp. Br. at 3-4. But, as discussed, in light of <u>Karingithi</u>, that argument is foreclosed by clear and on-point Ninth Circuit precedent. <u>Karingithi</u>, 2019 WL 333335 at *3. And so Petitioner has not met his burden to show that he is likely to succeed on the merits of his habeas petition. See <u>Disney Enterprises, Inc.</u>, 869 F.3d at 856. Further, because the "[l]ikelihood of success on the merits 'is the most important' <u>Winter</u> factor," and Petitioner has "fail[ed] to meet this 'threshold inquiry,' the court need not consider the other factors." <u>Id.</u> (quoting <u>Garcia</u>, 786 F.3d at 740). Thus, the Court concludes that a preliminary injunction is not warranted in this case.

### III. CONCLUSION

For the foregoing reasons, the Motion for a Preliminary Injunction is DENIED.

**IT IS SO ORDERED.**

Dated: February 5, 2019

CHARLES R. BREYER
United States District Judge

---

opinions decided before <u>Karingithi</u>. See <u>United States v. Arteaga-Centeno</u>, 2019 WL 134571 (N.D. Cal. Jan. 8, 2019); <u>United States v. Rojas Osorio</u>, 2019 WL 235042 (N.D. Cal. Jan. 16, 2019). Not only do these district court cases lack the authority to "expressly reject" a holding of the Ninth Circuit, but they could not have done so, because <u>Karingithi</u> had not been published. See <u>Karingithi</u>, 2019 WL 333335 (9th Cir. Jan. 28, 2019).

³ Petitioner's final argument is that the Ninth Circuit may decide to address the issue of whether jurisdiction may vest with an IJ upon the issuance of an NTA that lacks time and date information <u>en banc</u> and reverse the holding of <u>Karingithi</u>. Pet. Supp. Br. at 8. But Petitioner fails to identify any support for the rather remarkable proposition that the remote possibility that a Court of Appeals will overrule a controlling precedent is sufficient to demonstrate a likelihood of success on the merits. See <u>id.</u>

8